# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3896 | **DATE** | 12/5/2003 |
| **CASE TITLE** | Walter C. Bergstrom, Jr. vs. John McSweeney, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 1/13/2004 at 9:45 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion to dismiss [26-1] is granted in part and denied in part. Parties are granted leave to proceed with all discovery.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 0 8 2003 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 32 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | |
| | Copy to judge/magistrate judge. | | | |
| RO | courtroom deputy's initials | 03 DEC -5 PM 4:15 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| WALTER C. BERGSTROM, JR., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | No. 03 C 3896 |
| v. | ) | |
| | ) | Judge Ruben Castillo |
| JOHN McSWEENEY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

DOCKETED
DEC 0 8 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff Walter C. Bergstrom filed a five-count complaint against Defendants City of Blue Island, Village of Dixmoor and Village of Posen, various law enforcement officials from those three municipalities, the Northeast Regional Commuter Railroad Corporation d/b/a Metra and Metra Police Commander Donald Carroll. Presently before this Court is Defendants Metra and Commander Carroll's motion to dismiss. For the reasons provided below, we partially grant and partially deny Defendants' motion. (R. 26-1.)

### RELEVANT FACTS

Bergstrom's claims stem from six criminal cases that were brought against him in the Illinois Circuit Court of Cook County, which we refer to as the Blue Island case, the Illinois State Police case, the Possession of Unlawful Substances case, the Dixmoor case, the Posen case, and the Witness Intimidation case. In each case, Bergstrom claims that Defendants held him in jail and caused charges to be brought against him even though they knew that the charges were false. Metra and Commander Carroll were only involved in the Blue Island case and the Unlawful Possession of Controlled Substances case.

**The Blue Island Case**

On or about June 9, 2001, Blue Island police officers received a report that a uniformed police officer robbed a Hispanic man of $300. (*Id.* ¶ 27.) The victim reported that the officer was bald, wore a light blue shirt and drove a Chevrolet Caprice squad car, which was marked as "Metra Unit No. 16" and had licence plates ending in the numbers "13" or "17." (*Id.* ¶¶ 26-30.) The victim alleged that his stolen $300 comprised $10 bills, $20 bills and one $50 bill. (*Id.* ¶ 30.)

Blue Island police officers arrested Bergstrom, a Metra police officer, for this robbery. (*Id.* ¶¶ 20, 31.) Bergstrom has blue eyes, straight teeth, a medium build and a shaved head. (*Id.* ¶ 25.) As a Metra police officer, he wore a dark, navy blue uniform and drove a Ford Crown Victoria squad car, which was marked with the number "11" and gold "Metra Police" decals and had a license plate numbered "M114947." (*Id.* ¶¶ 22-24.) Incident to his arrest, Blue Island police officers found $610 in Bergstrom's breast pocket, which Bergstrom claims he had in order to pay his son's dentist bills. (*Id.* ¶¶ 33-35.) The $610 recovered from Bergstrom did not include the same denominations that were taken from the robbery victim. (*Id.* ¶ 33.)

In connection with this robbery, Bergstrom was prosecuted for armed robbery, aggravated robbery and official misconduct. (*Id.* ¶ 38.) Bergstrom claims that Blue Island police officers testified falsely against him before the grand jury and at his trial and that Commander Carroll made false statements about him, withheld evidence that would have exonerated him and falsely testified that he always drove Metra squad car "16." (*Id.* ¶¶ 40, 42.)

**Unlawful Possession of Controlled Substances Case**

On June 1, 2001, Bergstrom informed Commander Carroll, his supervisor, in writing that he had found several small bags containing contraband on the rear seat of his squad car.

(*Id.* ¶ 66.) Commander Carroll gave Bergstrom permission to keep the contraband until he could turn it over to the evidence depository at the Metra facility in downtown Chicago. (*Id.* ¶ 67.) After Bergstrom was arrested, he gave Blue Island police officers permission to search his personal vehicle. (*Id.* ¶ 63.) They recovered an evidence envelope containing controlled substances suspected to be cocaine and marijuana. (*Id.* ¶¶ 64-65.) Even though Blue Island police officer Bernadine Rzab had spoken with Commander Carroll, who was aware of Bergstrom's possession of this evidence envelope, Bergstrom was prosecuted for possession of a controlled substance and official misconduct. (*Id.* ¶¶ 69, 71.) Once again, Bergstrom alleges that Blue Island police officers testified falsely before the grand jury and at his trial. (*Id.* ¶ 73.)

Bergstrom attempted to commit suicide while he was imprisoned awaiting trial at the Blue Island police department. (*Id.* ¶ 117.) He claims that his attempted suicide was caused by Blue Island police officers' failure to adequately monitor and supervise him during his incarceration. (*Id.*) Ultimately, Bergstrom was found not guilty in both cases and the remaining charges against him were dropped. (*Id.* ¶ 121.)

## LEGAL STANDARDS

This Court will only grant a motion to dismiss if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). This Court will accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff. *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). A complaint states a claim if it gives the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47. "The plaintiff

is not required to plead facts or legal theories or cases or statutes, but merely to describe his claim briefly and simply." *Shah v. Inter-Continental Hotel Chi. Operating Corp.*, 314 F.3d 278, 282 (7th Cir. 2002).

## ANALYSIS

Bergstrom's complaint contains five counts. Count I is a 42 U.S.C. § 1983 claim alleging that Defendants deprived Bergstrom of his Fourth and Fourteenth Amendment rights by falsely arresting him, falsely imprisoning him and conspiring to falsely arrest and imprison him. Count II is a second 42 U.S.C. § 1983 claim alleging that Defendants deprived Bergstrom of his Fourteenth Amendment rights by prosecuting him maliciously. Counts III through V are Illinois state-law claims of malicious prosecution, false arrest and intentional infliction of emotional distress. Metra and Commander Carroll are named in all five counts.

## I. 42 U.S.C. § 1983 Claims: Counts I-II

### A. Commander Carroll

To state a section 1983 claim against Commander Carroll, Bergstrom must allege that: "(1) the conduct complained of was committed by a person acting under color of state law; and (2) the activity deprived [him] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Case v. Milewski*, 327 F.3d 564, 566 (7th Cir. 2003). Bergstrom alleges that Commander Carroll made false statements to Blue Island police officers, withheld exculpatory evidence and testified falsely at Bergstrom's criminal trial. Bergstrom further alleges that Commander Carroll conspired with the other Defendants to deprive him of his constitutional rights. Finally, Bergstrom alleges that these actions contributed to his false arrest, false imprisonment and malicious prosecution.

### 1. Fourth Amendment

In order to state a section 1983 claim alleging deprivation of his Fourth Amendment right not to be arrested without probable cause, Bergstrom need only plead that a person acting under color of state law, typically a law enforcement officer, arrested him without probable cause. *Ernst v. Anderson*, No. 02-C-4884, 2003 WL 174193, at *6 (N.D. Ill. Jan 27, 2003). Commander Carroll asserts that Bergstrom has not stated a claim against him because he did not personally arrest Bergstrom. The Seventh Circuit, however, in *Yeksigian v. Nappi*, 900 F.2d 101, 104 (7th Cir. 1990), held that a city supervisor acted under color of state law when he called the police to request that they arrest one of his employees. *Yeksigian* carved out a narrow exception to the general rule that an individual does not act under color of state law by merely supplying false information to an arresting officer. *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1352 (7th Cir. 1985).

Bergstrom's complaint alleges that "Defendant Commander Carroll of the Metra police falsely claimed that Plaintiff Bergstrom drove and was assigned to Metra Squad Unit 16, well knowing that Plaintiff Bergstrom was assigned to and always drove Metra Squad Unit 11." (R. 1, Compl. ¶ 41.) Importantly, Bergstrom does not allege that Commander Carroll called the police and requested that they arrest him. Therefore, the *Yeksigian* exception does not apply. Accordingly, Commander Carroll did not act under color of state law when he made false statements to the police.[1]

---

[1] The complaint does not indicate whether Commander Carroll's statements were made prior to or after Bergstrom's arrest. It would be unreasonable for this Court to infer that they were made prior to his arrest. Bergstrom explains the events surrounding his arrest in great detail and never alleges it was caused by Commander Carroll's false statements. Additionally, he discusses Commander Carroll's actions, (R. 1, Compl. ¶¶ 41-42), separately from his arrest, (*id.*

Bergstrom also alleges that Commander Carroll's actions prolonged his unlawful seizure. The Fourth Amendment, however, does not create a right to be free from state actions that perpetuate lawful arrests. *Gauger v. Hendle*, No. 02-C-3841, 2003 WL 22455958, at *4 (7th Cir. Oct. 30, 2003) (citing *McCulloch v. Gadert*, 344 F.3d 655, 660-61 (7th Cir. 2003) (interpreting *Reed v. City of Chi.*, 77 F.3d 1049, 1052 n.3 (7th Cir. 1996)), and *Lee v. City of Chi.*, 330 F.3d 456, 463 n.3 (7th Cir. 2003)). As a seizure does not continue past the *Gerstein* hearing, in which a court determines whether probable cause existed for a warrantless arrest, *see Gerstein v. Pugh*, 420 U.S. 103, 126 (1975), Commander Carroll's actions, even if they prolonged Bergstrom's seizure, did not deprive Bergstrom of any Fourth Amendment right.

The *Gauger* court noted that in light of *Newsome v. McCabe*, 256 F.3d 747, 750-51 (7th Cir. 2001) (holding that section 1983 claims alleging due process violations stemming from malicious prosecution are unavailable when a state malicious prosecution action exists), the Fourth Amendment may apply after a *Gerstein* hearing to avoid the "shocking" result that a police frame-up that results in conviction does not constitute a constitutional tort. *Gauger*, 2003 WL 22455958, at *4. As the Seventh Circuit has not yet reexamined this issue, we adhere to the current rule that the Fourth Amendment does not apply to acts that prolong a lawful arrest.

### 2. Fourteenth Amendment

Broadly reading Bergstrom's section 1983 claims, we conclude that he has alleged that Commander Carroll deprived him of his due process rights in three ways: (1) by extending the

---

¶¶ 31-36). If these statements were made after his arrest, then Commander Carroll cannot be liable for his false arrest. Thus, we hold in the alternative that Bergstrom failed to properly allege that Commander Carroll caused him to be arrested without probable cause.

6

time that he was imprisoned; (2) by causing him to be prosecuted maliciously; and (3) by depriving him of a fair trial. The first two ways do not state a claim.

> A due process claim cannot be maintained when a specific constitutional provision (here the Fourth Amendment) protects the right allegedly violated. *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997); *Graham v. Connor*, 490 U.S. 386, 394 (1989). Moreover, to the extent [the plaintiff] maintains that [the defendant] denied him of due process by causing him to suffer "[a] deprivation of liberty from a prosecution and a contrived conviction . . . deliberately obtained from the use of false evidence," his claim is, in essence, one for malicious prosecution, rather than a due process violation. As we emphasized in [*Newsome*, 256 F.3d at 750], "the existence of a tort claim under state law knocks out any constitutional theory of malicious prosecution" and Illinois has a common law tort action for malicious prosecution.

*McCann v. Mangialardi*, 337 F.3d 782, 786 (7th Cir. 2003). Thus, Bergstrom's claim that his continued imprisonment deprived him of his due process rights is barred because that right is already protected by his Fourth Amendment right not to be arrested without probable cause. Further, his claim that he was maliciously prosecuted in violation of his due process rights cannot be brought because the existence of the same cause of action under Illinois law bars its assertion under section 1983.

We do find, however, that Bergstrom has alleged that Commander Carroll deprived Bergstrom of his right to a fair trial by making false statements and withholding exculpatory evidence. The *Gauger* court stated that police officers who make false statements to prosecutors are not withholding exculpatory evidence (the truth) when the defendant knows the statements are false.[2] *Gauger*, 2003 WL 22455958, at *4-5. This issue, however, is not squarely before the

---

[2] *Gauger*, thus, appears to limits both *Newsome*, 256 F.3d at 752 (stating that police officers can be liable if they are "not candid with prosecutors"), and *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988) (stating that police officers can be liable if they were "instrumental in the plaintiff's continued confinement or prosecution" because they "deliberately supplied misleading information"). *But see Hobley v. Chi. Police Commander Burge*, No. 03-C-3678, 2003 WL 22682362, at *8 (N.D. Ill. Nov. 12, 2003) (stating that the *Gauger* court "went

7

Court as Bergstrom has also alleged that Commander Carroll withheld exculpatory evidence. Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the government must disclose evidence favorable to the defense where the evidence is material to either the defendant's guilt or punishment. *See also United States v. Tadros*, 310 F.3d 999, 1005 (7th Cir. 2002). Because Bergstrom alleged that Commander Carroll withheld exculpatory evidence, he has stated a section 1983 claim against Commander Carroll for violating his due process right to a fair trial.

### 3. Conspiracy

Plaintiff also alleges that Commander Carroll conspired with the other Defendants to deprive him of his Fourteenth Amendment right to a fair trial.[3] (R. 1, ¶ 130.) To state a section 1983 conspiracy claim, Bergstrom must allege: (1) an express or implied agreement among Defendants to deprive him of his constitutional rights, (2) that Defendants made overt acts in furtherance of the agreement, and (3) that the agreement actually deprived him of a constitutional right. *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988). Yet Bergstrom only needs to "indicate the parties, general purpose, and approximate date" of the conspiracy. *Walker v. Thompson*, 288 F.3d 1005, 1007-08 (7th Cir. 2002) (stating that conspiracy actions should not be dismissed because they are "conclusory" or because they fail to specify an overt act). Bergstrom has alleged the parties (all the Defendants), the general purpose (to violate his constitutional rights), and the approximate date (June 2002 to April 2003) of the conspiracy. Thus, as we have

---

out of its way to reaffirm the cause of action for framing someone for a crime he did not commit"). This Court is mindful that *Gauger* should be interpreted so as to avoid the "shocking" result that a police frame-up is not a constitutional tort. *Gauger*, 2003 WL 22455958, at *4.

[3] Bergstrom actually alleges that Metra conspired with the other Defendants, but this allegation implicitly states that Commander Carroll conspired with the other Defendants as well.

already found that Bergstrom sufficiently alleged that Commander Carroll deprived him of his right to a fair trial, we find that Bergstrom alleged that Commander Carroll also conspired to deprive him of that right.

**B. Metra**

Municipal corporations, like Metra[4], cannot be liable under section 1983 under the theory of *respondeat superior*. *McCormick v. City of Chi.*, 230 F.3d 319, 324 (7th Cir. 2000). Thus, in order to state a section 1983 claim against Metra, Bergstrom must allege that he was deprived of a constitutional right by: (1) an express policy, (2) a widespread practice that is so well-settled as to constitute a custom with the force of law, or (3) a person with final policymaking authority. *Id.* Bergstrom alleges that:

> [Defendant Metra] acted in consort and conspiracy and in furtherance of a common plan with the other Defendants and pursuant to its widespread custom and policy to violate the constitutional rights of Plaintiff Bergstrom by withholding evidence that was favorable to and would exonerate Plaintiff of the criminal charges pending against him.

(R. 1, Compl. ¶ 130.)

Even though Bergstrom alleges that Metra acted "pursuant to a widespread custom and policy," he has not alleged an actual custom or policy. He has only alleged that Metra had a "widespread policy and custom to violate his constitutional rights." A plaintiff must allege that a municipal defendant had a policy or custom *which* deprived him of his constitutional rights, not that the municipal defendant had a policy *of* depriving him of his constitutional rights; such an

---

[4] Metra is a public corporation created under the Regional Transportation Authority Act, 70 Ill. Comp. Stat. 3615/1.01 *et seq.* Defendants acknowledge in their briefs that Metra, a municipal corporation, can be liable under section 1983. (R. 26, Defs.' Mot. ¶ 10; R. 30, Defs.' Reply § B.)

9

allegation is akin to alleging that a single incident is a policy. *See Strauss v. City of Chi.*, 760 F.2d 765, 767 (7th Cir. 1985) (affirming dismissal because "nothing in the complaint suggests that the incident was other than an isolated one unrelated to municipal policy"); *Brown v. Knapp*, 156 F. Supp. 2d 732, 737 (N.D. Ill. 2001). Accepting the existence of such a narrowly-focused policy would be tantamount to permitting liability via *respondeat superior*. *Strauss*, 760 F.2d at 768. Thus, we find that Bergstrom has not alleged that Metra deprived him of a constitutional right or conspired to do so. Accordingly, we dismiss Metra from Counts I and II.[5]

## II. Illinois Claims: Counts III-V

### A. Malicious Prosecution

Count III is an Illinois malicious prosecution claim. To state a claim for malicious prosecution under Illinois law, Bergstrom must allege that: (1) Defendants instituted or continued the underlying suit maliciously and without probable cause; (2) the action terminated favorably to him; and (3) he suffered some special injury beyond the usual expense, time and annoyance of defending himself. *Cult Awareness Network v. Church of Scientology Int'l*, 685 N.E.2d 1347, 1350 (Ill. 1997). The only disputed issue is whether Bergstrom alleged that Defendants instituted or continued the proceedings.

Police officers can only be liable for malicious prosecution if their "participation in it [was] so active and positive a character as to amount to advice and cooperation." *Denton v. Allstate Ins. Co.*, 504 N.E.2d 756, 760 (Ill. App. Ct. 1986). Bergstrom alleges that Commander Carroll

---

[5] We also dismiss the remaining Defendants who did not join this motion from Count II because it is a section 1983 malicious prosecution claim, which is barred by *Newsome*. Thus, we dismiss Count II in its entirety.

maliciously continued the proceedings against him by making false statements and withholding evidence. These actions could amount to advice and cooperation, so Bergstrom has stated a malicious prosecution claim against Commander Carroll.

Bergstrom has also stated a claim against Metra because under Illinois law it could be liable for Commander Carroll's actions through *respondeat superior*. *See Mitchell v. Norman James Constr. Co.*, 684 N.E.2d 872, 878 (Ill. App. Ct. 1997) ("It is well settled that, under the doctrine of respondeat superior, an employer may be liable for the negligent, wilful, malicious, or even criminal acts of its employees when such acts are committed in the course of employment and in furtherance of the business of the employer."). Thus, unlike Bergstrom's section 1983 claims, his Illinois state-law claims can be brought against Metra under *respondeat superior*.

### B. False Arrest

Count IV is an Illinois false arrest claim. To state a claim for false arrest under Illinois law, Bergstrom must allege that Defendants arrested or procured his arrest without probable cause. *Meerbrey v. Marshall Fields & Co.*, 564 N.E.2d 1222, 1231 (Ill. 1990); *Johnson v. Target Stores, Inc.*, 791 N.E.2d 1206, 1220 (Ill. App. Ct. 2003). Bergstrom has not alleged that Commander Carroll arrested him, nor has he alleged that he procured his arrest by making false statements. We have already determined that it would be unreasonable to infer that Commander Carroll's statements were made prior to Bergstrom's arrest. Thus, Bergstrom has not stated a false arrest claim against Commander Carroll or vicariously against Metra.

### C. Intentional Infliction of Emotional Distress

Count V is an Illinois intentional infliction of emotional distress claim. In order to state an intentional infliction of emotional distress claim under Illinois law, Bergstrom must allege that (1)

11

Defendants' extreme and outrageous conduct caused him severe emotional distress and (2) Defendants intended to inflict severe emotional distress or knew that such distress was highly probable. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). "[T]he tort does not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Id.* (quoting Restatement (Second) of Torts § 46, cmt. d (1965)). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46, cmt. d (1965). Bergstrom has alleged all of the requisite elements, so he has stated a claim against Commander Carroll and vicariously against Metra.

Finally, Metra argues that Bergstrom's intentional infliction of emotional distress claim against it is time-barred. All personal injury claims against Metra must be "commenced within one year from the date that the cause of action accrued." 70 Ill. Comp. Stat. 3615/5.03. Bergstrom filed his complaint on June 6, 2003, so his claim would be time-barred if it accrued on or before June 5, 2002. As Bergstrom's intentional infliction of emotional distress claim incorporates the conduct underlying his malicious prosecution claim, the cause of action did not accrue until the state criminal proceedings against him were terminated. *Carroccia v. Anderson*, 249 F. Supp. 2d 1016, 1028 (N.D. Ill. 2003). The criminal proceedings against him did not start until the end of October 2002, so his intentional infliction of emotional distress claim did not accrue on or before June 5, 2002. Accordingly, Bergstrom's claim against Metra is not time-barred.

## CONCLUSION

Commander Carroll and Metra's motion to dismiss is partially granted and partially denied. (R. 26-1.) First, we find that Count I states a section 1983 claim against Commander

12

Carroll for depriving Bergstrom of his due process right to a fair trial and for conspiracy to deprive him of that right. We dismiss Count I with respect to Commander Carroll to the extent that it is based on the Fourth Amendment and in its entirety with respect to Metra. Second, we dismiss Count II in its entirety with respect to all Defendants—including those who did not join the present motion to dismiss. Third, we find that Counts III and V state a claim against Commander Carroll and Metra. Finally, we dismiss Count IV only with respect to Commander Carroll and Metra.

The parties are authorized to proceed with discovery and are again requested to reevaluate their final settlement positions. A status hearing will be heard in open court on January 13, 2004 at 9:45 a.m.

ENTERED:

Judge Ruben Castillo
United States District Court

**Dated: December 5, 2003**